IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CIVIL NO. 07-0672-WS |
| ) | |
| CHRISTOPHER WILLIAMS, ) | CRIMINAL NO. 05-0087-WS-B |
| ) | |
| Petitioner. ) | |

**ORDER**

This matter is before the Court on petitioner's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (doc. 52). The Motion has been briefed and is ripe for disposition at this time.

**I.      Background.**

On March 24, 2005, petitioner Christopher James Williams was indicted in this District Court. The four-count Indictment (doc. 1) charged him with the following offenses: (1) conspiring to possess with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 846 (Count One); (2) possessing with intent to distribute approximately 5 grams of crack cocaine on February 8, 2005, in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) possessing with intent to distribute approximately 4 grams of crack cocaine on February 17, 2005, in violation of § 841(a)(1) (Count Three); and (4) possessing a Bryco Arms 9mm pistol, on November 30, 2004, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Four).

*A.      Pretrial Motions.*

Following Williams' indictment, a number of pretrial developments occurred that are germane to the instant § 2255 petition. In particular, although Magistrate Judge Bivins initially set conditions of release for Williams (see doc. 6), she issued a bench warrant for his arrest on June 1, 2005 based on a report by the U.S. Probation Office that he had tested positive for marijuana use, in violation of those conditions of release. (Docs. 15, 16.) On June 2, 2005, Judge Bivins conducted an evidentiary hearing on the issue of whether Williams' conditions of

release should be modified or revoked.  At the hearing, Williams' court-appointed lawyer, Thomas Bear, contended that the lab results were not conclusive, arguing that "[i]t's not uncommon for someone who's been a user of marijuana to have marijuana stored in their fat cells. ... And somebody who has a history of long-term use can test positive weeks after their last use."  (June 2, 2005 Hearing Transcript (doc. 40), at 3.)  The Government presented testimony that while Williams' drug screens had initially showed decreasing levels of marijuana in his system, those levels did not decline as much as would be expected if use had stopped, and then increased substantially in May 2005 drug screens.  (*Id.* at 4-6.)  The pretrial services officer testified that when he confronted petitioner with the data, Williams "said that he had used while on release."  (*Id.* at 6.)  Bear rigorously cross-examined the pretrial services officer about the meaning of a 10-nanogram increase observed in Williams' drug screen, and specifically inquired as to whether marijuana was stored in fat cells of the body and may be released incrementally or whether the rates of release may vary over time.  (*Id.* at 9-10.)  Bear also represented at the hearing that Williams' admission of post-arrest marijuana use had been motivated by his being nervous, and that Williams had simply said what he thought the pretrial services officer wanted to hear.  (*Id.* at 13.)  At the close of the evidentiary hearing, Judge Bivins made a finding that Williams "has continued to use marijuana while on pretrial release" and therefore ordered him detained pending trial.  (*Id.* at 15.)[1]

While the detention issue was playing out, Bear continued with Williams' defense by filing a Motion to Suppress (doc. 21), contending that the search warrant was defective because the property description set forth in the warrant did not match Williams' home, such that the

---

[1]     Bear did not let the issue drop after the June 2 hearing.  Almost two weeks later, he filed a Motion for Release (doc. 22) arguing that Williams' most recent urinalysis showed a marked decrease in marijuana levels and supported Williams' contention that he had not used.  On June 23, 2005, Judge Bivins entered an Order (doc. 24) denying the Motion for Release, reiterating her determination that she was "satisfied that Defendant used marijuana while on pretrial release, and thus violated the conditions of his release."  (*Id.* at 3.)  In support of this finding, Judge Bivins specifically noted the drug tests showing an increasing level of marijuana in Williams' system, as well as his admission to the pretrial services officer that he had used marijuana two to three weeks earlier.

search violated the Fourth Amendment.[2]  On July 5, 2005, Senior District Judge Butler entered an Order (doc. 26) denying the Motion to Suppress without a hearing.  Judge Butler concluded that the warrant was "sufficiently particularized" to satisfy the Fourth Amendment, reasoning that "[t]he street address was alone sufficient to describe the property to be searched, and the name of the resident presented additional information from which even an officer unfamiliar with the investigation could have determined the place to be searched, if necessary.  The inclusion of additional information which turned out to be inaccurate does not change that fact."  (Doc. 26, at 2-3.)

### B. *The Guilty Plea and Sentencing.*

On July 5, 2005, the date on which his trial was to commence and the date on which his Motion to Suppress was denied, Williams entered a plea of guilty to Counts One (the § 846 conspiracy count) and Four (the § 922(g) firearm count).  The transcript of that hearing confirms that Williams' guilty plea was conditional, and that he reserved the right to appeal the denial of the Motion to Suppress.  (*See* doc. 29, at 4.)

Prior to sentencing, Bear filed the "Position of Parties with Respect to Sentencing Factors" (doc. 30) on Williams' behalf, interposing fully a dozen objections to the findings and recommendations contained in the Presentence Investigation Report (the "PSI").  Of particular importance to these § 2255 proceedings, the PSI recommended that Williams not receive a downward adjustment for acceptance of responsibility "due to the defendant's continued drug use," as evidenced by the revocation of his bond by Judge Bivins.  (Doc. 34, ¶ 17.)  Bear objected to this recommendation, asserting that "the lab results as presented by pretrial services are not conclusive" on the question of continued drug use.  (Doc. 30, ¶ 11.)  Bear pressed the issue further at the sentencing hearing held on October 17, 2005, as he argued in some detail that the observed spike in marijuana levels was not a definitive indicator that Williams had used marijuana while on conditions of release.  (Doc. 41, at 7-9.)  In that regard, Bear contended that "the lab results just don't support any kind of recent use of marijuana with that low of an amount

---

[2] More precisely, Williams' position was that while the warrant accurately stated his name and the street address of his residence, the description of property was wrong because the warrant characterized the house as being green and white with a fence around it, while Williams' house is actually black and white and never had a fence.

of nanograms, as they had been falling progressively." (*Id.* at 8.)  When the Government referred the undersigned to the June 2 evidentiary hearing as to the acceptance of responsibility point, the Court noted that "this is an issue that was litigated before Judge Bivins.  And obviously, she found him in violation of conditions of release and revoked him or he wouldn't be in custody right now ...." (*Id.* at 35.)  The undersigned concluded that Williams was not entitled to an acceptance of responsibility adjustment, again referring to Judge Bivins' findings and reasoning that "the fact that he tested positive for the use of marijuana ... indicates that he did not voluntarily terminate his criminal conduct ... to the extent that he is not entitled to a two-level reduction for acceptance of responsibility." (*Id.* at 53.)  At the conclusion of the sentencing hearing, the undersigned sentenced Williams to a term of imprisonment of 210 months on Count One, and a term of imprisonment of 120 months on Count Four, to run concurrently.  (*Id.* at 57.)

### C. *The Direct Appeal.*

Williams appealed his conviction and sentence, and was represented in that endeavor by retained counsel, John A. Bivens.  (*See* doc. 48.)  According to Williams' § 2255 Motion, on direct appeal he raised the following four assignments of error: (a) that the sentence imposed was procedurally and substantively unreasonable pursuant to the factors set forth in 18 U.S.C. § 3553(a) and was greater than necessary to meet the purposes of sentencing; (b) that the drug weight found by the Court was based on insufficient facts; (c) that the District Court "fail[ed] to give fair and complete consideration to Petitioner's motion to suppress evidence"; and (d) that the sentence was unreasonable because of the disparity in penalties between crack and powder cocaine offenses.  (Doc. 52, ¶ 6.)[3]

On October 5, 2006, the appellate court affirmed the conviction and sentence.  *United States v. Williams*, 2006 WL 2827901 (11th Cir. Oct. 5, 2006).  Two findings of the Eleventh Circuit are of particular relevance to these § 2255 proceedings.  First, with respect to Williams' contention that the District Court had failed to give full and complete consideration to the motion to suppress, the panel reasoned as follows: "Because Williams did not allege any facts, which, if

---

[3] In briefing the § 2255 Motion, neither side has submitted the relevant excerpts from appellant's brief to identify the specific issues raised on direct appeal.  That exhibit having been omitted from the court file, the Court instead looks to the formulation of those issues as identified in the § 2255 Motion.

proven, would have provided a basis for relief, the district court did not abuse its discretion by denying him an evidentiary hearing on his motion to suppress." *Id.* at *1. Second, as for Williams' § 3553(a) / reasonableness objections, the Eleventh Circuit expressly rejected them as well. *Id.* at *3-4.

Williams did not attempt to overturn the appellate decision by petitioning the U.S. Supreme Court for writ of *certiorari*, but instead proceeded to § 2255 review.

### D.     The § 2255 Petition.

On September 21, 2007, Williams, by and through retained counsel Robert A. Ratliff, filed his § 2255 Motion collaterally attacking his conviction and sentence as violative of his rights to due process of law and effective assistance of counsel. Williams identifies four grounds for relief, to-wit: (a) trial counsel rendered ineffective assistance by failing to present material evidence concerning acceptance of responsibility; (b) counsel on direct appeal rendered ineffective assistance by failing to argue that the motion to suppress was wrongly denied; (c) Williams' sentence violates due process because it was greater than necessary to achieve the purposes of § 3553; and (d) Williams should be resentenced under the new guideline amendments for crack cocaine sentencing if they are found to be retroactive. (Doc. 53, at 2.) The Government has filed a memorandum of law (doc. 55) arguing that all of these grounds for relief are meritless, and Williams has filed a reply (doc. 56).

## II.     Legal Standard.

Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Frady*, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral review.

A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim raised. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel. *Cross*, 893 F.2d at 1290. "To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant." *Gordon v. United States*, 496 F.3d 1270, 1276-77 (11th Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). With respect to the deficient performance prong, a petitioner must show that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Cross*, 893 F.2d at 1290; *see also Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms"). "There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take." *Gordon*, 496 F.3d at 1281 (citations omitted); *see also Dingle v. Secretary for Dep't of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious

that he was not functioning as the counsel guaranteed by the Sixth Amendment"). The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial." *Stewart v. Secretary, Dep't of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." *Stewart*, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Cross*, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Davis v. Terry*, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong

presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

**III.   Analysis.**

   *A.   Ineffective Assistance: Acceptance of Responsibility.*

Petitioner first contends that § 2255 relief should be granted because his trial counsel (Bear) "erred by failing to present material evidence supporting a reduction in sentence for acceptance of responsibility." (Doc. 53, at 5.) In this regard, Williams takes Bear to task for failing to present evidence bolstering alternative, innocuous reasons why the marijuana levels in his body might have increased. In support of this argument, Williams cites studies showing that certain circumstances (such as use of ibuprofen, recent weight loss, or strenuous physical activity) can trigger false positives in marijuana tests. The crux of Williams' ineffective assistance claim is that, with respect to the observed spike in his marijuana levels, Bear "failed to offer any reasonable explanation, even though such explanation was easily available." (*Id.* at 6.)

The Court finds that petitioner has failed to satisfy either the deficient performance prong or the prejudice prong of the *Strickland* test. As to the deficient performance prong, it cannot be disputed that Bear vigorously litigated the lab results, both at the June 2005 detention hearing and again at the sentencing hearing. He argued that marijuana stored in Williams' fat cells may have been released in spurts rather than incrementally, that the 10-nanogram spike was too small to be meaningful, that the broader trend was progressively declining levels, that the lab results were inconclusive, and that the Court should overlook Williams' admission of recent drug use because his client did not really mean it. Throughout his handling of this issue, Bear plainly furnished Williams with zealous and effective advocacy that far exceeded any constitutional minimum thresholds, particularly considering the weakness of the available arguments and the strength of the Government's evidence that Williams had, in fact, used marijuana while on bond.[4]

---

   [4] Recall that Williams expressly admitted to his pretrial services officer that he had used marijuana while on conditions of release. Recall as well that the marijuana spike occurred after a series of tests in which it declined, such that the increase was indicative of recent use. Based on the strength of this evidence, it would have been justifiable (and would have comported with Williams' Sixth Amendment rights) for Bear simply to concede the point that

Nonetheless, Williams would second-guess his lawyer's performance, arguing that Bear should have put on evidence that ibuprofen use, or weight loss, or intense physical exertion might trigger a false positive test.  Significantly, however, Williams offers not one shred of evidence that he used ibuprofen, lost weight, or engaged in intense physical exertion prior to any of his drug screens.  Rather, it appears that Williams would fault Bear for not arguing in speculative, hypothetical terms that such behaviors (if Williams had engaged in them, even though there was no evidence that he had) might have impacted his lab results in some fashion.  The Sixth Amendment does not obligate counsel to indulge in such tenuous, wholly conjectural arguments, and any such contention would undoubtedly have failed.  Accordingly, the undersigned concludes that it was not defective performance for Bear not to interpose remote hypotheticals about ibuprofen, weight loss and the like, and that Williams incurred no prejudice by virtue of Bear's failure to do so.

Furthermore, it bears noting that what Williams is challenging here is the adequacy of Bear's representation at sentencing on the prior drug use issue.  At that time, not only was there evidence of a spike in Bear's marijuana levels and an admission by Bear to pretrial services that he had in fact been using marijuana while on conditions of release, but there was also a specific finding by Judge Bivins (after an evidentiary hearing) that Williams had used marijuana while on conditions of release.  Under the circumstances, this Court is confident that its determination that Williams was not entitled to an acceptance of responsibility adjustment would not have been altered had Bear proffered some speculative, remote, esoteric and factually unfounded theory concerning ibuprofen use, weight loss or physical exercise to explain away the positive drug test.

For all of these reasons, the Court readily concludes that Williams' Sixth Amendment

---

Williams had been caught using marijuana, in a manner that both terminated his right to supervised release and rendered him ineligible for an acceptance of responsibility adjustment. *See generally Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (defense counsel is not ineffective for failing to raise a nonmeritorious issue); *Williams*, 2006 WL 2827901, at *4 (observing that it was not error for district court to consider Williams' continued drug use for acceptance of responsibility purposes, given that "Williams admitted to probation officers that he had used marijuana while on pre-trial release").  That Bear elected to forge ahead and litigate the marijuana use issue both at the detention hearing and sentencing, despite the long odds that such arguments might succeed, confirms that he provided assistance to Williams far beyond the Sixth Amendment floor for effective representation.

right to effective assistance of counsel was not impaired by his trial counsel's advocacy concerning Williams' eligibility for a two-level reduction for acceptance of responsibility. Petitioner is not entitled to § 2255 relief on this ground.

### B.     Ineffective Assistance: Appeal of Ruling on Motion to Suppress.

Continuing with his ineffective assistance arguments, Williams faults his appellate counsel (Bivens) for allegedly "fail[ing] to argue that the Court's denial of his suppression motion was improper." (Doc. 53, at 7.) According to petitioner, Bivens bypassed the issue of whether the motion to suppress was properly denied, but instead confined his appeal to the ancillary question of whether the District Court should have conducted an evidentiary hearing on that motion. In petitioner's view, Bivens "essentially abandoned Petitioner's main issue" by formulating the objection in that manner. (Doc. 56, at 4.)[5]

Assuming that Williams is correct that his appellate counsel raised only the question of whether an evidentiary hearing should have been held on the motion to suppress, petitioner ignores the fact that the legal standard for such a hearing is intertwined with the merits of the suppression motion. Under Eleventh Circuit law, "[w]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (citation omitted). In other words, an evidentiary hearing may be omitted if the motion to suppress is devoid of merit on its face. That is precisely what the Eleventh Circuit found here, as it specifically concluded that Williams' motion "did not allege any facts which, if proven, would have provided a basis for relief." *Williams*, 2006 WL 2827901, at *1.[6] This language is

---

[5]     The Government protests that petitioner's argument is counterfactual, and that Bivens did in fact argue the legality of the search on appeal. Unfortunately, the court file does not contain a copy of appellant's brief on direct appeal that would definitively establish whether this argument was or was not raised; therefore, the Court has only the warring interpretations of counsel concerning the arguments that were presented on direct appeal. The undersigned will not, and need not, choose between them.

[6]     The motion to suppress articulated the factual predicate of Williams' suppression argument in some detail, including the following allegations: (a) that the warrant stated that the property to be searched was the residence of Christopher James Williams, 807 East Franklin Street, Demopolis, Alabama, a green and white house with a fence around it; (b) that Williams

tantamount to a determination by the Eleventh Circuit that the premise of Williams' suppression motion was so badly flawed that no evidentiary hearing was necessary because the motion identified no facts that could possibly entitle Williams to suppression of the evidence.

All of the foregoing is to say that, even if Williams is correct that Bivens did not raise the merits of the motion to suppress on direct appeal, such an omission did not rise to the level of ineffective assistance of counsel because the Eleventh Circuit found that the motion lacked sufficient merit even to justify an evidentiary hearing. Of course, it is not constitutionally defective performance for appellate counsel to abandon a meritless argument on direct appeal. *See Diaz v. Secretary for Dep't of Corrections*, 402 F.3d 1136, 1144-45 (11th Cir. 2005) ("Appellate counsel would not have prevailed on this argument, and nonmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel."); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (declaring that defendant's appellate counsel was not ineffective for failing to raise a nonmeritorious issue); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit."). As Williams' second ground for § 2255 relief alleges that his appellate counsel was ineffective for failing to raise an argument that the Eleventh Circuit's ruling foreclosed, he cannot prevail on that basis.

### C.    *Reasonableness of Sentence under § 3553.*

Next, Williams leaves the realm of ineffective assistance of counsel and argues that the sentence he received was "greater than necessary to achieve the goals of imprisonment, resulting in an unreasonable sentence," and that the Court should have sentenced him below the applicable Sentencing Guidelines range rather than at the low end of said range. (Doc. 53, at 10-14.)

The problem with this ground for relief is that Williams admittedly raised this very argument on direct appeal. Indeed, the § 2255 Motion includes a statement that Williams sought

---

did reside at that address but that his house is black and white, with no fence, such that the physical description is incorrect; and (c) that in executing the search warrant, law enforcement agents seized a firearm and obtained incriminating statements from Williams. (Doc. 21, at 1-2.) By determining that no evidentiary hearing was necessary, the Eleventh Circuit found that these allegations, even if Williams could prove them to be true, would not entitle him to suppression of the evidence.

relief on appeal on the ground that his sentence was "procedurally and substantively unreasonable ... [and] greater than necessary to meet the purposes of sentencing." (Doc. 52, ¶ 6.1.) Review of the Eleventh Circuit's decision denying Williams' appeal confirms that these arguments relating to the reasonableness of his sentence were considered and rejected. *See Williams*, 2006 WL 2827901, at *3-4. Having unsuccessfully argued on direct appeal that his sentence was unreasonable and greater than necessary to meet the purposes of sentencing, Williams cannot raise the same argument anew in the context of his § 2255 petition. *See Nyhuis*, 211 F.3d at 1343 ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) ("prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding").[7] Petitioner does not proffer any viable grounds why he should be exempted from this general prohibition on reruns in the § 2255 context. Therefore, this ground for relief is without merit.

### D. *Crack Cocaine Sentencing Amendments.*

Finally, Williams asserts that he "should be resentenced under the new guideline amendments for crack cocaine sentencing, if they are determined to be retroactive." (Doc. 53, at 14.) On November 1, 2007, six weeks after this § 2255 petition was filed, Amendment 706 to the Sentencing Guidelines took effect. Amendment 706 operates as a downward ratchet on the penalty structure for crack cocaine offenses to reduce the guideline ranges for particular drug quantities, such that the base offense level associated with any given crack cocaine quantity falls by two levels. The Sentencing Commission has yet to decide whether Amendment 706 will have retroactive application, and conducted a public hearing on this very issue on November 13, 2007.

If Amendment 706 were to apply retroactively, Williams argues, his base offense level for the 210 grams of crack cocaine attributed to him at sentencing would fall from a 34 to a 32, with an accompanying reduction in his advisory guidelines range. Williams acknowledges in his

---

[7] To the extent that Williams might argue that this ground for relief is analytically distinct from that presented on appeal because he is couching it for the first time in a due process theory in his § 2255 petition, that distinction fails. "A rejected claim [on direct appeal] does not merit rehearing [in a § 2255 petition] on a different, but previously available, legal theory." *Nyhuis*, 211 F.3d at 1343.

reply brief (doc. 56) that any resentencing under Amendment 706 would be pursuant to 18 U.S.C. § 3582(c)(2), which provides, in pertinent part, as follows:

> "[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), ... the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*."

18 U.S.C. § 3582(c)(2) (emphasis added). The Sentencing Commission's policy statement regarding retroactive sentences is U.S.S.G. § 1B1.10, which identifies those amendments as to which retroactive reductions of sentence are authorized.[8] The Eleventh Circuit has established a "bright-line rule that amendments claimed in § 3582(c)(2) motions may be retroactively applied *solely* where expressly listed under § 1B1.10(c)." *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003).[9] Thus, "for a sentence to be reduced retroactively under § 3582(c)(2), a court must determine whether there has been an amendment to the Sentencing Guidelines that has

---

[8] The relevant language of that policy statement is as follows:

"(a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.

\*       \*       \*

"(c) Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 488, 490, 499, 505, 506, 516, 591, 599, 606, 657, and 702."

U.S.S.G. § 1B1.10 (effective Nov. 1, 2007).

[9] When § 1B1.10 authorizes retroactive application of a Sentencing Guidelines amendment, a district court must substitute only the retroactive amendment for the corresponding provisions in effect at the time of sentencing, without disturbing any other guideline application rulings. *See United States v. Cothran*, 106 F.3d 1560, 1562-63 (11th Cir. 1997) (when court retroactively applies amendment, it must leave all of its previous factual decisions intact).

lowered the guideline range applicable to that sentence and is listed under § 1B1.10(c)." *Id.* at 907. As of this writing, Amendment 706 has not been listed under § 1B1.10(c); therefore, the Court is not authorized to apply it retroactively. If at some future date the Sentencing Commission elects to make Amendment 706 retroactive and to list it in § 1B1.10(c), Williams may of course file a § 3582(c)(2) motion to modify his sentence, and nothing herein would bar him from doing so. For now, however, Williams seeks § 2255 relief in the form of retroactive application of a Sentencing Guidelines amendment as to which no retroactivity determination has been made. Williams' request is, at best, premature, and for that reason is **denied**, without prejudice to his ability to renew the request as a § 3582(c)(2) motion if Amendment 706 is made retroactive.[10]

---

[10] In his reply brief, Williams raises a new argument that Amendment 706 is a mere "clarifying amendment," of the type which is routinely applied retroactively under well established caselaw. It is improper for petitioner to raise this previously available argument for the first time in a reply brief after it is too late for the Government to be heard in opposition. *See, e.g., Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 317 n.89 (S.D. Ala. 2006) ("this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief"); *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."). Even if this procedural infirmity were overlooked, petitioner's suggestion that Amendment 706, which is obviously a substantive amendment to the Sentencing Guidelines, is a mere clarifying amendment borders on frivolity. "Clarifying amendments do not effect a substantive change, but provide persuasive evidence of how the Sentencing Commission originally envisioned application of the relevant guideline." *Burke*, 152 F.3d at 1332. Far from simply implementing the Sentencing Commission's original intent, Amendment 706 reflects a sweeping policy shift to the penalty structure for crack cocaine offenses and is explained by the Sentencing Commission as "an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio." *United States Sentencing Guidelines, Supplement to Exhibit C*, at 230 (effective date November 1, 2007). Because Amendment 706 cannot plausibly be characterized as a mere "clarifying amendment," the Court rejects Williams' invitation to so construe it for retroactivity purposes.

**IV.   Conclusion.**

For all of the foregoing reasons, Williams' Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (doc. 52) is **denied**.[11]  A separate judgment will enter.

**DONE** and **ORDERED** this 30th day of November, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11]   The law is clear that "[a] district court may deny relief under 28 U.S.C. § 2255 without an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989) (citations omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (reaffirming principle that § 2255 petitioner is not entitled to evidentiary hearing when his claims are mere conclusory allegations unsupported by specifics).  As the file in this case conclusively establishes that Williams is not entitled to relief on the grounds specified in his § 2255 petition, an evidentiary hearing would serve no purpose.  Accordingly, Williams' § 2255 petition is denied without a hearing.